UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASYLUM SEEKER ADVOCACY PROJECT,<br><br>　　　Plaintiff,<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>　　　Defendant. | Case No. 25-2133<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

　　　1.　　　This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking to compel Defendant U.S. Citizenship and Immigration Services ("USCIS") to expeditiously process Plaintiff Asylum Seeker Advocacy Project's ("ASAP") FOIA request (the "FOIA Request") for **a single document**: a February 14, 2025 Memorandum issued by Acting Deputy Director of USCIS Andrew Davidson (the "Benefits Pause Memo"), ordering an agency-wide administrative pause on all pending benefit requests filed by noncitizens who entered the United States through certain parole processes. These parole processes include, but may not be limited to, the Uniting for Ukraine Process ("U4U"); the CHNV Process for certain Cubans, Haitians, Nicaraguans, and Venezuelans ("CHNV"); and Family Reunification Parole Process for nationals of several countries who have U.S.-citizen relatives ("FRP"). The existence of the Benefits Pause Memo was first reported by CBS News on February 19, 2025.[1]

---

[1] *See* Camilo Montoya-Galvez, *U.S. pauses immigration applications for certain migrants welcomed under Biden*, CBS NEWS (Feb. 19, 2025), https://www.cbsnews.com/news/u-s-pauses-immigration-applications-for-certain-migrants-welcomed-under-biden/. ASAP attached this article to its FOIA Request. *See* Exhibit 1 hereto (referencing article as Exhibit A to the FOIA Request).

1

Given that it is critical to understand immediately the effect of the Benefits Pause Memo on the lives of hundreds of thousands of parolees in the United States, ASAP seeks an injunction compelling USCIS to expeditiously process its FOIA Request and promptly produce the Benefits Pause Memo.

2.     On February 19, 2025, the same day the Benefits Pause Memo was first reported by CBS News, ASAP recognized its far-reaching implications and submitted the FOIA Request, which sought expedited processing.  *See* Ex. 1.  ASAP's FOIA Request demonstrated that ASAP satisfied three independent "compelling need" grounds for expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and the applicable regulation, 6 C.F.R. § 5.5(e)(1).  Despite this showing, USCIS denied ASAP's expedited processing request on February 21, 2025 without explanation.  *See* Exhibit 2 (FOIA Acknowledgment and Denial of Expedited Processing).

3.     There is robust public interest, discussion, and debate about the Benefits Pause Memo, the people it impacts, and how it fits into the puzzle of the new Administration's multitude of immigration policy announcements.  But more importantly, with every day that passes, hundreds of thousands of directly impacted people go without critical information they need to make both time-sensitive and life-altering decisions in their immigration cases, such as whether and when to submit their applications for asylum, and whether and when to apply to renew their work permits to USCIS.  Similarly, immigration attorneys are unable to counsel their impacted clients on any number of nuanced and complex immigration issues while the Benefits Pause Memo remains hidden from the public.

4.     For these reasons, ASAP files the instant action, respectfully requesting that the Court order USCIS to expeditiously process ASAP's FOIA Request and disclose promptly the Benefits Pause Memo.

## JURISDICTION AND VENUE

5. This court has subject-matter jurisdiction over Plaintiff's claims under 5 U.S.C. § 552 *et seq.* (FOIA statute) and 28 U.S.C. § 1331 (federal question). This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act).

6. This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(6)(E)(iii) to review an agency's denial of an expedited processing request. *See also* 6 C.F.R § 5.8(e).

7. Venue is proper in this District under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because this is a civil action in which Defendant USCIS is a federal agency, there is no real property involved in this action, and Plaintiff ASAP has its principal place of business in this District.

8. USCIS acknowledged receipt of ASAP's FOIA Request, and denied ASAP's request for expedited processing, by letter on February 21, 2025. *See* Ex. 2 (FOIA Acknowledgment and Denial of Expedited Processing). ASAP seeks review of the denial of expedited processing and a declaration that USCIS's denial of ASAP's request for expedited processing was improper.

## PARTIES

9. Plaintiff Asylum Seeker Advocacy Project ("ASAP") is a national 501(c)(3) nonprofit that works with its members to build a more welcoming United States for individuals fleeing persecution. ASAP's membership consists of over 690,000 asylum seekers in the United States. ASAP is headquartered in New York, New York. ASAP's members do not pay any fees or costs for their membership.

10. ASAP harnesses the power of technology to regularly disseminate information and legal resources to, and connect over various platforms with, its membership. ASAP supports

members as they navigate the immigration system—through breaking news alerts, a virtual legal help desk, social media posts, and in-depth resources, including written analyses and informational YouTube videos, which are collectively accessed millions of times per year. ASAP works alongside asylum seekers in trying to build the immigration system they want— pursuing change through litigation, strategic communications, and other forms of member-led advocacy. *See* https://help.asylumadvocacy.org/about/. ASAP's public-facing resource page is available at https://help.asylumadvocacy.org/. Further, ASAP frequently communicates with its entire membership via emails and text messaging, at least monthly, as well as additional communication as needed.

11. As part of its work creating and frequently updating public legal resources for its members to help them navigate the immigration system and understand the current state of federal immigration law and policy, ASAP has provided information with respect to the potential impacts of the Benefits Pause Memo that is the subject of the FOIA Request.[2]

12. ASAP frequently works with national print and news media outlets; indeed, ASAP's work and its members have repeatedly been featured in prominent media outlets including The Washington Post, The New York Times, The Wall Street Journal, USA Today, CBS News, The Atlantic, Telemundo, Univision, The Hill, Associated Press, ABC News, and The Guardian, among others. *See, e.g.*, Miriam Jordan, *Migrants Separated From Their Children Will Be Allowed Into U.S.*, N.Y. TIMES (May 3, 2021),

---

[2] *See, e.g.*, Asylum Seeker Advoc. Project, *How are laws changing for asylum seekers?* (Mar. 11, 2025), https://help.asylumadvocacy.org/law-changes-jan-2025/ ("**[I]f you received parole through CHNV, U4U, or Family Reunification, the government has paused the processing of new applications –** including applications for work permits, asylum, TPS, or permanent residence. If you received parole through CHNV, U4U, or Family Reunification, you can still submit new applications, but no decisions will be made, and we do not know whether you will receive a receipt." (emphasis added)); Asylum Seeker Advoc. Project, *Advocacy Updates for ASAP Members* (Mar. 12, 2025), https://help.asylumadvocacy.org/work-permit-updates/ ("On February 19, CBS News reported that the government would 'pause' processing immigration applications for certain immigrants who had received a temporary status known as 'parole.'").

https://www.nytimes.com/2021/05/03/us/migrant-family-separation.html (quoting ASAP co-Executive Director Conchita Cruz); Rafael Bernal, *Mayors ask DHS to extend migrant work permits*, THE HILL (Feb. 12, 2024), https://thehill.com/latino/4463771-mayors-dhs-migrant-work-permits/ (quoting an ASAP member); Catherine Rampell, *Families like this one were torn apart at the border.  The U.S. still hasn't made things right*, WASH. POST (Nov. 23, 2020), https://www.washingtonpost.com/graphics/2020/opinions/separated-families-border-us-immigration-trump-biden/ (in-depth story featuring two ASAP members and clients); Julia Preston, *'No words for the anxiety':  migrants desperate for jobs trapped in US asylum maze*, THE GUARDIAN (Sept. 10, 2023), https://www.theguardian.com/us-news/2023/sep/10/us-immigration-work-permits-asylum-maze; Michelle Hackman, *Immigrants to Get Extension for Expiring or Expired U.S. Work Permits*, THE WALL ST. J. (May 3, 2022), https://www.wsj.com/articles/immigrants-to-get-extension-for-expiring-or-expired-u-s-work-permits-11651579201.  As stated in its FOIA Request, ASAP plans to share information received in response to that request with its membership and interested media.

13. When members join ASAP, ASAP asks them, "What is one thing you would change about the asylum process?"  According to 118,518 asylum seekers from more than 175 countries around the world who voiced their priorities, the top five ways that the U.S. government should change the asylum process are (1) speeding up processing times for work permits and asylum applications; (2) making benefits like work permits and social security numbers easier to obtain; (3) increasing the accessibility and transparency of the asylum system; (4) granting more people asylum and making it easier to get immigration status in the United States; and (5) treating asylum seekers more humanely.  *See* Asylum Seeker Advoc. Project, *5 Ways to Change the Asylum Process* (Oct. 25, 2024), https://help.asylumadvocacy.org/5-ways-

to-change-the-asylum-process/. The Benefits Pause Memo—and the Agency's refusal to make it public—is in direct conflict with ASAP members' top priorities.

14. Defendant U.S. Citizenship and Immigration Services ("USCIS") is a component agency of the Department of Homeland Security ("DHS") and is the federal agency primarily responsible for receiving, adjudicating, and setting priorities for the adjudication of affirmative asylum applications. USCIS is an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and has custody and control over the document ASAP seeks.

## FACTUAL ALLEGATIONS

### I. The Benefits Pause Memo and Its Impacts

15. Upon information and belief, on February 14, 2025, Acting Deputy Director of USCIS Andrew Davidson issued the Benefits Pause Memo, *i.e.*, a memorandum with immediate effect, to various USCIS directorates and program offices directing them not to adjudicate immigration benefit requests filed by noncitizens who are or were paroled into the United States under several parole processes, including U4U, CHNV, and FRP, without providing affected applicants any notice of or opportunity to challenge the pause. Upon information and belief, the FRP program applies to certain nationals of Colombia, Ecuador, El Salvador, Guatemala, Honduras, Haiti, and Cuba who have immediate family members in the United States through whom they are eligible for family-based immigration relief. CBS News first broke the news of the Benefits Pause Memo on February 19, 2025.

16. Approximately 800,000 people have entered the United States on urgent humanitarian parole through U4U, CHNV, and FRP combined, including people from Ukraine, Cuba, Haiti, Nicaragua, Venezuela, Colombia, Ecuador, El Salvador, Guatemala, and Honduras. Specifically, it is estimated that approximately 240,000 Ukrainians who were displaced by the war with Russia have entered the United States on U4U; approximately 530,000 people from

countries devastated by natural disasters and political crises have entered through CHNV; and up to 100,000 people with U.S. citizen relatives who are eligible for lawful permanent residence based on those close relationships have entered through FRP.[3]

17. Many people who enter on parole apply for other immigration benefits for which they are eligible, including work permits and work permit renewals in various categories, Temporary Protected Status ("TPS"), asylum, family-based petitions, and applications for lawful permanent residence (also known as "green cards"). Under the Benefits Pause Memo, officials will no longer be able to process any applications for these or any other immigration benefits, if such applications are filed by individuals who arrived in the United States under the parole processes specified in the Benefits Pause Memo.[4]

18. Some of the Trump-Vance Administration's immigration policy directives have been made public by news media outlets but still have not been released through official channels. For example, an apparent photograph or screenshot of a February 18, 2025 directive to all Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") personnel regarding expedited removal procedures to be applied to parolees (among

---

[3] *See* Ex. 1 at 1 (noting roughly 240,000 Ukrainians arrived under U4U; 530,000 people entered through CHNV; and the United States committed to welcoming up to 100,000 Central Americans through FRP).

[4] *See, e.g.*, Andrew Kreighbaum, *Trump Freezes Immigration Benefits for Ukrainians Who Fled to US*, BLOOMBERG L. (Feb. 19, 2025), https://news.bloomberglaw.com/daily-labor-report/dhs-freezes-visas-other-benefits-for-immigrants-paroled-into-us; *US pauses immigration applications for migrants under 3 major parole programs*, NBC MIA. (Feb. 19, 2025), https://www.nbcmiami.com/on-air/as-seen-on/us-pauses-immigration-applications-for-migrants-under-3-major-parole-programs/3547963/; Adam Shaw & Peter Pinedo, *Trump Freezes Applications for Biden-Era Migrant Programs Amid Fraud, National Security Concerns*, FOX NEWS (Feb. 19, 2025), https://www.foxnews.com/politics/trump-admin-freezes-applications-biden-era-migrant-programs-amid-fraud-national-security-concerns; Caterina Cappellari, *USCIS Memo Pauses TPS, Asylum, EAD, Other Applications from Parolees*, THE NAT'L L. REV. (Feb. 24, 2025), https://natlawreview.com/article/uscis-memo-pauses-tps-asylum-ead-other-applications-parolees; Ksenia Maiorova, *Existence of USCIS Policy Halting Adjudication of Applications Filed by UFU and CHNV Parolees Confirmed: What You Need to Know*, GREEN & SPIEGEL, AN IMMIGR. L. FIRM (MAR. 12, 2025), https://www.gands.com/en-us/2025/03/12/existence-of-uscis-policy-halting-adjudication-of-applications-filed-by-ufu-and-chnv-parolees-confirmed-what-you-need-to-know/.

other issues) has been made public by Reuters, but not by the Administration. *See* https://fingfx.thomsonreuters.com/gfx/legaldocs/gkpljxxoqpb/ICE_email_Reuters.pdf.

19. The Benefits Pause Memo, to ASAP's knowledge and as of the date of filing this action, is not public via official government websites nor through the news media.

20. There is intense public discussion and debate about these policies, including the Benefits Pause Memo and other policies that impact the hundreds of thousands of parolees who were welcomed to the United States under the Biden Administration. The New York Times, for instance, has a dedicated landing page accessible from the "Top Stories" of its home page for "U.S. Immigration and Border News." *See U.S. Immigration and Border News*, N.Y. TIMES, https://www.nytimes.com/news-event/immigration-us.

21. Moreover, since ASAP filed its FOIA Request, several additional prominent news outlets have continued to report on the Benefits Pause Memo and its impact on immigrant communities across the United States. *See, e.g.*, *supra* note 4 (collecting articles from Bloomberg Law, NBC Miami, Fox News, and The National Law Review).

22. These immigration enforcement policies, on their own and read together, have created confusion and uncertainty. Directly impacted communities, and the legal assistance providers that serve them (including ASAP), are engaged in a monumental effort to discern the current state of the already complicated immigration laws, the lawfulness of the Administration's actions, and how to best proceed on individual and systemic bases. USCIS's failure to disclose the Benefits Pause Memo has left hundreds of thousands of parolees in the dark about the status of their pending applications and compromises the public's and impacted parolees' interest in obtaining timely information vital to the ongoing debates around immigration benefits.

23. Hundreds of thousands of directly impacted individuals, along with their attorneys, families, employers, and communities, are forced to guess at what could become of their immigration cases, their jobs, and for asylum seekers their very lives, and what steps they should take in response.

24. With the Benefits Pause Memo shrouded in secrecy, ASAP's members, the approximately 800,000 people who entered the United States on these parole processes, immigration attorneys who represent impacted clients, and the public at large cannot assess the impact on individual cases or on a systemic basis.

25. ASAP has been unable to provide complete information about the Benefits Pause Memo or informed guidance about the Memo's impacts to its members because the Memo is not available publicly.

26. For example, in response to the frequently asked question, "How are laws changing for asylum seekers?" ASAP's resource page answers in part, with respect to "Parole through CHNV and other country-specific programs":

> People with parole can also apply for asylum or other types of immigration status if eligible. However, this can be a complicated decision that depends on your specific circumstances. For example, a risk of submitting a new application is that you would be providing more information to the government, such as an address. Also, if you received parole through CHNV, U4U, or Family Reunification, the government has paused the processing of new applications – including applications for work permits, asylum, TPS, or permanent residence. If you received parole through CHNV, U4U, or Family Reunification, you can still submit new applications, but no decisions will be made, and we do not know whether you will receive a receipt.

Asylum Seeker Advoc. Project, *How are laws changing for asylum seekers?* (Mar. 11, 2025), https://help.asylumadvocacy.org/law-changes-jan-2025/.

27. And on ASAP's "Advocacy Updates for ASAP Members" page, it has been unable to provide its members with information regarding the Benefits Pause Memo aside from the following:

9

> On February 19, CBS News reported that the government would "pause" processing immigration applications for certain immigrants who had received a temporary status known as "parole." . . . On the day the CBS News story came out, ASAP requested that U.S. Citizenship and Immigration Services (USCIS) give us more information about this policy, so that we can share more information with ASAP members and other immigrants who could be impacted. If USCIS does not provide this information, ASAP can file a lawsuit and ask a federal judge to force USCIS to share this information. We will share updates with ASAP members about this request on this page.

Asylum Seeker Advoc. Project, *Advocacy Updates for ASAP Members* (Mar. 12, 2025), https://help.asylumadvocacy.org/work-permit-updates/.

28. Just as ASAP is unable to fully assess the benefits and risks facing paroled individuals in applying for immigration benefits to which they are entitled, nor can individuals themselves or their families, lawyers, employers, or communities without the Benefits Pause Memo being public.

29. As ASAP explained in its FOIA Request, Lynden Melmed, former Chief Counsel of USCIS, stated the benefits pause ordered in the Benefits Pause Memo leaves parolees "susceptible to removal from the country if the government terminates their parole status"[5] or if their parole expires. Many of the parolees impacted by the Benefits Pause Memo fled oppressive regimes, death threats, and persecution in their home countries, as numerous published articles on the federal government's separate action suspending various parole programs, which ASAP cited in its FOIA Request, make clear. *See, e.g.*, Luis Melecio-Zambrano, *They entered the country legally to flee desperate conditions. Now, they could be deported*, THE DETROIT NEWS (Feb. 9, 2025), https://www.detroitnews.com/story/news/nation/2025/02/09/some-who-entered-us-legally-to-flee-desperate-conditions-now-face-deportation/78372307007/; Anna-Catherine Brigida, *'We don't have options': Trump ends parole for Venezuelans, Cubans, Nicaraguans*

---

[5] *See* Ex. 1 at 3 & Ex. A.

*and Haitians*, HOUS. LANDING (Jan. 23, 2025), https://houstonlanding.org/we-dont-have-options-trump-ends-parole-for-venezuelans-cubans-nicaraguans-and-haitians/; Camilo Montoya-Galvez, *In 2 years since Russia's invasion, a U.S. program has resettled 187,000 Ukrainians with little controversy*, CBS NEWS (Apr. 24, 2024), https://www.cbsnews.com/news/ukrainian-refugees-us-uniting-for-ukraine-russia-invasion/.

30. An article cited in ASAP's FOIA Request reveals the devastating situation parolees face: Carmen, a journalist who was paroled into the United States through CHNV, escaped likely torture or death in her home country, Nicaragua, and has a pending asylum application. Ex. 1 at 3 n.5 (citing Luis Melecio-Zambrano, *They entered the country legally to flee desperate conditions. Now, they could be deported*, THE DETROIT NEWS (Feb. 9, 2025), https://www.detroitnews.com/story/news/nation/2025/02/09/some-who-entered-us-legally-to-flee-desperate-conditions-now-face-deportation/78372307007/). Upon information and belief, Carmen's asylum application has been indefinitely paused under the Benefits Pause Memo, and she could be deported if she loses parole status and is subject to enforcement.

31. Many parolees are in a similarly precarious position; recently, several impacted people who likewise face deportation to dangerous regimes or displacement to war-torn nations because of the Benefits Pause Memo filed a class action lawsuit challenging the undisclosed policy. *See Doe v. Noem*, No. 25-cv-10495 (D. Mass. Feb. 28, 2025), ECF No. 1 ¶¶ 15–22 (plaintiffs include parolees who evacuated from Ukraine to escape war and who fled from Nicaragua to escape government persecution). Without access to the Benefits Pause Memo, hundreds of thousands of people are left unable to adequately assess their risk of being subjected to removal proceedings or expedited removal, or challenge such action.

11

32. Furthermore, with each day that passes, more and more parolees approach statutory, regulatory, and other immigration-related deadlines by which to make decisions in their cases that are obscured by USCIS's non-disclosure of the Benefits Pause Memo. Without access to the information contained in the Benefits Pause Memo, applicants for immigration benefits may imminently miss deadlines they otherwise would meet, lose out on critical protections they currently rely on, or unintentionally trigger long-term negative consequences in their cases that they cannot anticipate now without the information the Benefits Pause Memo contains.

33. While the complexity and nuance of immigration law make it impossible to assess the full extent of the harms that are accruing each day the Benefits Pause Memo remains concealed from the public, two examples are illustrative: the one-year filing deadline for asylum applications and the 540-day automatic extension for certain work permits. Both are time-sensitive immigration benefits application processes reportedly impacted by the Benefits Pause Memo.

34. First, asylum applicants must generally submit their applications for asylum within one year of arriving in the United States or lose the ability to qualify. *See* 8 U.S.C. § 1158(a)(2)(B); *Lin v. Holder*, 763 F.3d 244, 246 (2d Cir. 2014). Parolees who entered in the last calendar year are approaching the one-year asylum filing deadline every day, yet without timely access to the Benefits Pause Memo, they may reasonably decide to wait for more information before submitting any applications or even assume they cannot currently apply for asylum despite being eligible. Likewise, attorneys with clients in this situation do not have the basic information needed to provide complete legal advice about whether to apply for asylum in light of the undisclosed Benefits Pause Memo. Parolees and their counsel have no clarity on

whether they can submit an asylum application and comply with the deadline; whether the one-year deadline may be tolled in this situation; or whether some other course of action is appropriate. Without timely access to the information in the Benefits Pause Memo, these individuals risk missing the one-year deadline and losing their asylum eligibility altogether, all while deprived of information needed to make important case decisions.

35. Second, consider people who entered on parole who are now eligible to renew their work permits in various eligibility categories. To ameliorate the impacts of USCIS's extreme processing backlogs for work permit renewals,[6] certain work permit renewal applicants (including asylum seekers) are entitled to an automatic extension of their work permit for 540 days past their current permit's listed expiration date, *but only if* they file their renewal application prior to the date their current work permit expires. *See* U.S. Citizenship & Immigr. Servs., *Automatic Employment Authorization Document (EAD) Extension* (Jan. 13, 2025), https://www.uscis.gov/eadautoextend. Without the automatic extension, hundreds of thousands of people who timely file their work permit renewal application will see their current work permit lapse.[7] The automatic extension is therefore critical to prevent employment-authorized workers from falling out of the workforce solely due to agency delays.[8] If a person who is

---

[6] As of October 22, 2024, there were 1.4 million work permit applications "awaiting processing—including roughly . . . 500,000 seeking renewals." Letter from Sen. Elizabeth Warren, et al., to Dep't of Homeland Sec. Sec'y Alejandro Mayorkas and U.S. Citizenship & Immigr. Servs. Dir. Ur Jaddou at 2 (Oct. 22, 2024), https://aboutblaw.com/bf2u. USCIS's backlog in processing work permit applications is so concerning that, in Fiscal Year 2024, Congress appropriated $34 million for USCIS to reduce its work permit processing backlog, which is more than has ever been appropriated for this purpose. U.S. S. COMM. ON APPROPRIATIONS, BILL SUMMARY: HOMELAND SECURITY FISCAL YEAR 2024 APPROPRIATIONS BILL (Mar. 21, 2024), https://www.appropriations.senate.gov/news/majority/bill-summary-homeland-security-fiscal-year-2024-appropriations-bill-2.

[7] Adriel Orozco, *Businesses and Workers Get Win with Permanent Work Permit Extension Rule*, IMMIGR. IMPACT (Dec. 13, 2024), https://immigrationimpact.com/2024/12/13/biden-permanent-work-permit-extension-rule/ ("USCIS estimates that the permanent extension will save workers and business owners billions of dollars" and prevent "between 306,000 and 468,000 applicants for work permit renewals" from "experienc[ing] a lapse in employment authorization.").

[8] *See, e.g.*, Andrew Kreighbaum, *DHS Extends Duration of Immigrant Work Permits in New Rule (2)*, BLOOMBERG L. (Dec. 10, 2024), https://news.bloomberglaw.com/daily-labor-report/dhs-extends-duration-of-immigrant-work-

eligible for the automatic 540-day extension fails to file their renewal application before their current work permit expires, they face the high risk that their current permit will expire before their renewed permit is issued, "losing their ability to work legally because of bureaucratic delays out of their control" and compromising their ability to support their family and contribute to the U.S. economy.  Kreighbaum, *supra* note 8 (quoting Sen. Elizabeth Warren).  This also harms employers:  when workers unexpectedly lose work authorization, they must be dropped from the workforce and be replaced or their roles held open indefinitely, either of which puts significant strain on businesses that already face labor shortages.[9]  Parolees are approaching their work permit expiration dates every day with no understanding whether they can or should file renewal applications in light of the news reports of the benefits pause.

## II.     Plaintiff's FOIA Request and Request for Expedited Processing

36.     Recognizing the urgency to inform its members and the public about the Benefits Pause Memo, ASAP submitted the FOIA Request to USCIS using the online portal provided by

---

permits-in-new-rule ("'With this final rule, DHS has ensured that ASAP members and other immigrants will not fall out of the workforce because of work permit processing backlogs,' [co-executive director of ASAP, Conchita Cruz,] said."); Letter from 110 Business Leaders to Dep't of Homeland Sec. Sec'y Alejandro Mayorkas, Domestic Policy Council Dir. Neera Tanden, & U.S. Citizenship & Immigr. Servs. Dir. Ur Jaddou at 2 (Oct. 25, 2024), https://www.uscis.gov/sites/default/files/document/foia/WorkPermitBacklog-AmericanImmigrationCouncil.pdf (hereinafter, "Letter from 110 Business Leaders") ("Processing work permit applications quickly has a direct positive impact on maintaining and growing immigrants' invaluable contributions to the U.S. workforce.  Their talent and skills make the United States more competitive at a global level and help fill shortages in critical industries such as healthcare, education, construction, and hospitality." (embedded links omitted)); Daniel Wiessner, *DHS Cements Automatic Work Permit Extensions for Immigrants*, REUTERS (Dec. 10, 2024), https://www.reuters.com/legal/government/dhs-cements-automatic-work-permit-extensions-immigrants-2024-12-10/ (DHS Secretary Alejandro Mayorkas said the 540-day extension "will help eliminate red tape that burdens employers, ensure hundreds of thousands of individuals eligible for employment can continue to contribute to our communities, and further strengthen our nation's robust economy" (internal quotations omitted)).

[9] *See also, e.g.*, Letter from 110 Business Leaders, *supra* note 8 at 1 ("As business leaders, we understand that a robust workforce is our most valuable asset.  Therefore, our top priority is ensuring businesses have the necessary talent to foster resilient communities and thriving economies.  And yet, talented and eager immigrant workers are unable to participate in the job market because they must wait for over a year to . . . renew their work authorization with [USCIS]."); Stephanie Ferguson Melhorn, *Understanding America's Labor Shortage*, U.S. CHAMBER OF COM. (Feb. 11, 2025), https://www.uschamber.com/workforce/understanding-americas-labor-shortage (Companies face "unprecedented challenges trying to find enough workers to fill open jobs.  Right now, the latest data shows that we have 8 million job openings in the U.S. but only 6.8 million unemployed workers.").

USCIS on February 19, 2025, the same day the Benefits Pause Memo was first reported by CBS News. *See* Ex. 1 (FOIA Request). The entirety of the "Request for Information" section of ASAP's FOIA Request is reproduced below:

> **ASAP seeks just one document:** a memorandum dated February 14, 2025, issued by Acting Deputy Director for USCIS, Andrew Davidson, ordering an agency-wide administrative pause on all pending benefit requests filed by noncitizens who entered the United States through three parole programs (the "Feb. 14 Memo").[10] These parole programs include Uniting for Ukraine; the CHNV Program for certain Cubans, Haitians, Nicaraguans, and Venezuelans; and Family Reunification Parole. The existence of this memorandum was first reported by CBS News on February 19, 2025. *See* Camilo Montoya-Galvez, *U.S. pauses immigration applications for certain migrants welcomed under Biden*, CBS News, Feb. 19, 2025, https://www.cbsnews.com/news/u-s-pauses-immigration-applications-for-certain-migrants-welcomed-under-biden/, attached as **Exhibit A**.

Ex. 1 at 2.

37. ASAP's FOIA Request explicitly requested that its processing be expedited pursuant to 5 U.S.C. § 552(a)(6)(E)(II) and the recipient Defendant's applicable regulations, *see* 6 C.F.R. § 5.5(e)(1). Ex. 1 at 1–2. The FOIA Request asked that USCIS expedite processing of the request for three independent reasons: first, the FOIA Request involves "an urgency to inform the public about an actual or alleged federal government activity" by ASAP, an organization "primarily engaged in disseminating information," 5 U.S.C. § 552(a)(6)(E)(v)(II), 6 C.F.R. § 5.5(e)(1)(ii), Ex. 1 at 3–4; second, the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual, 5 U.S.C. § 552(a)(6)(E)(v)(I), 6 C.F.R. § 5.5(e)(1)(i), Ex. 1 at 2–3; and third, the FOIA Request involves the "loss of substantial due process rights," 6 C.F.R § 5.5(e)(1)(iii), Ex. 1 at 4. The FOIA

---

[10] While Plaintiff's FOIA Request refers to the document as the "Feb. 14 Memo," it is referred to in this Complaint and Motion for Preliminary Injunction as the "Benefits Pause Memo."

Request included "a statement, certified to be true and correct, explaining in detail the basis for making the request for expedited processing," as required by 6 C.F.R. § 5.5(e)(3).  *See* Ex. 1 at 4.

38. The FOIA Request also sought a fee waiver, explaining that disclosure of the information is in the public interest and that disclosure of the information is not in ASAP's commercial interest.  *See* Ex. 1 at 4–6.

### III. USCIS's Response to ASAP's FOIA Request

39. By letter dated February 21, 2025, USCIS acknowledged receipt of the FOIA Request.  *See* Ex. 2 at 1.

40. USCIS's letter assigned the case number COW2025001246 and granted ASAP's request for a fee waiver.  *Id.* at 1–2.  In so doing, USCIS accepted ASAP's reasons for seeking a waiver of fees.

41. USCIS's February 21, 2025 letter placed the case on USCIS's complex track (Track 2) for processing FOIA requests and invoked a 10-day extension to the response deadline pursuant to 5 U.S.C. § 552(a)(6)(B).  *See* Ex. 2 at 1–2.

42. USCIS's February 21, 2025 letter also denied ASAP's request for expedited processing, stating, "Based on the information you provided, we have determined that expedited processing of your request is not warranted."  *Id.* at 1.  The letter did not acknowledge or respond to ASAP's reasons for requesting expedited processing under three of the four DHS regulatory grounds for expedition at 6 C.F.R. §§ 5.5(e)(1)(i)–(iii), nor provide any explanation as to why USCIS denied ASAP's request for expedited processing, but merely set forth, verbatim, the DHS regulations that provide grounds for expedited processing.  *See* Ex. 2 at 1 (reciting 6 C.F.R. §§ 5.5(e)(1)(i)–(iv)).

43. As of March 14, 2025, the USCIS online portal for tracking FOIA requests, https://first.uscis.gov/#/check-status, states that the "Place in Queue" of the FOIA Request as

16

number "1304 of 1682 pending requests," the "Status" as "Files Received," and "Estimated Completion Date" as "03/28/2025"—a full six weeks after the Benefits Pause Memo has been in effect and potentially applied to hundreds of thousands of people.  *See* Exhibit 3.

44. USCIS has not produced any records or made any substantive response to the FOIA Request.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of FOIA, 5 U.S.C. § 552, Failure to Grant Request for Expedited Processing

45. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

46. FOIA provides that agencies must promulgate regulations providing for expedited processing of requests for records when the requestor "demonstrates a compelling need," 5 U.S.C. § 552(a)(6)(E)(i)(I), which means the request was "made by a person primarily engaged in disseminating information" and there is an "urgency to inform the public concerning actual or alleged Federal Government activity," *id.* § 552(a)(6)(E)(v)(II); when "a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," *id.* § 552(a)(6)(E)(v)(I); or "in other cases determined by the agency." *Id.* § 552(a)(6)(E)(i)(II).

47. USCIS promulgated regulations for expedited processing of FOIA requests at 6 C.F.R. § 5.5(e)(1), dictating that "Requests and appeals will be processed on an expedited basis whenever the component determines that they involve" "(ii) An urgency to inform the public about an actual or alleged federal government activity, if made by a person who is primarily engaged in disseminating information;" "(i) Circumstances in which the lack of expedited processing could

reasonably be expected to pose an imminent threat to the life or physical safety of an individual;" or "(iii) The loss of substantial due process rights[.]"

48. ASAP requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and USCIS's implementing regulations, 6 C.F.R. § 5.5(e)(1), subparts (i), (ii), and (iii), and demonstrated why each of these grounds for expedited processing is independently warranted. *See* Ex. 1 at 2–4.

49. USCIS summarily denied expedited processing in its letter dated February 21, 2025. *See* Ex. 2 at 1.

50. USCIS's failure to grant ASAP's expedited processing requests violates 5 U.S.C. § 552(a)(6)(E).

## PRAYER FOR RELIEF

WHEREFORE, ASAP respectfully requests that this Court:

(1) Assume jurisdiction over this action and maintain jurisdiction until USCIS produces the Benefits Pause Memo and complies with every Order of this Court;

(2) Declare that USCIS's failure to grant expedited processing of the FOIA Request violates 5 U.S.C. § 552(a)(6)(E);

(3) Preliminarily enjoin USCIS to complete expedited processing and respond to the FOIA Request, including by promptly disclosing the Benefits Pause Memo at no cost;

(4) Award ASAP reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E), the Equal Access to Justice Act, and any other applicable provision of law; and

(5) Grant such other and further relief as the Court may deem just and appropriate.

//

//

| | |
|---|---|
| Dated: March 14, 2025 | Respectfully submitted, |
| | |
| Jessica Hanson* |   */s/ Joshua Colangelo-Bryan* |
| Marcela Johnson* | Joshua Colangelo-Bryan |
| ASYLUM SEEKER ADVOCACY PROJECT | Anwen Hughes* |
| 228 Park Ave. S., #84810 | HUMAN RIGHTS FIRST |
| New York, NY 10003 | 75 Broad Street, 31st Floor |
| (646) 647-6779 | New York, NY 10004 |
| jessica.hanson@asylumadvocacy.org | ColangeloJ@humanrightsfirst.org |
| marcela.johnson@asylumadvocacy.org | HughesA@humanrightsfirst.org |
| | (212) 845-5243 |
| *Motion for admission* pro hac vice *forthcoming* | *Attorneys for Plaintiff Asylum Seeker Advocacy Project* |

19