# EXHIBIT 1

ASYLUM SEEKER ADVOCACY PROJECT

February 19, 2025

*Sent via Online FOIA Request & Response Service*

U.S. Citizenship and Immigration Services (USCIS)
National Records Center (NRC)
FOIA/PA Office
P.O. Box 648010
Lee's Summit, MO 64064-8010

Re: Freedom of Information Act Request – EXPEDITED PROCESSING REQUESTED – for Feb. 14, 2025 USCIS Memorandum Pausing Benefit Requests for Certain Parolees

Dear FOIA Officer:

This letter constitutes a request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, submitted on behalf of Asylum Seeker Advocacy Project ("ASAP" or "Requestor").

This request seeks a single document: a memorandum dated February 14, 2025 issued by Acting Deputy Director for USCIS, Andrew Davidson, ordering an agency-wide administrative pause on all pending benefit requests filed by nearly 800,000 parolees who entered the United States through three parole programs: Uniting for Ukraine (approximately 240,000 people), CHNV Program for certain Cubans, Haitians, Nicaraguans, and Venezuelans (approximately 530,000 people), and Family Reunification Parole (up to 100,000 people).[1]

ASAP asks that USCIS expedite its processing of this request and that any fees associated with this request be waived.

I.  Requestor: The Asylum Seeker Advocacy Project ("ASAP")

Requestor ASAP is a national 501(c)(3) nonprofit that works with its members – over 690,000 asylum seekers across the United States – to build a more welcoming United States for individuals fleeing persecution. ASAP creates legal resources for our members to help them navigate the

---

[1] *See* Camilo Montoya-Galvez, *U.S. pauses immigration applications for certain migrants welcomed under Biden*, CBS News (Feb. 19, 2025), https://www.cbsnews.com/news/u-s-pauses-immigration-applications-for-certain-migrants-welcomed-under-biden/ (noting roughly 240,000 Ukrainians arrived under the Uniting for Ukraine and 530,000 people entered through CHNV); Camilo Montoya-Galvez, *U.S. opens new immigration path for Central Americans and Colombians to discourage border crossings*, CBS News (July 7, 2023), https://www.cbsnews.com/losangeles/news/immigration-colombia-central-america-border-us-relatives-border-crossings/ (stating that the United States committed to welcoming up to 100,000 Central Americans through the Family Reunification Parole Process).

228 Park Ave. S. #84810, New York, New York 10003-1502
info@asylumadvocacy.org | asylumadvocacy.org

immigration system. Some of those resources include information about how to navigate the immigration system if an individual has entered the United States through the three parole programs at issue and have pending applications for immigration relief including asylum, Temporary Protected Status ("TPS"), adjustment of status, and others.[2] Thus, ASAP's programming is directly and significantly impacted by the February 14th memorandum that is the subject of this FOIA request.

ASAP's members do not pay any fees or costs for their membership. ASAP supports its members as they navigate the immigration system by providing breaking news alerts, a virtual legal help desk, and in-depth online resources. Additionally, ASAP engages in litigation and other forms of member-led advocacy to advance the rights and priorities of asylum seekers. Finally, ASAP works with national print and news media outlets and plans to share information obtained from FOIA disclosures with its membership and interested media.

## II.    Request for Information

**ASAP seeks just one document:** a memorandum dated February 14, 2025, issued by Acting Deputy Director for USCIS, Andrew Davidson, ordering an agency-wide administrative pause on all pending benefit requests filed by noncitizens who entered the United States through three parole programs (the "Feb. 14 Memo"). These parole programs include Uniting for Ukraine; the CHNV Program for certain Cubans, Haitians, Nicaraguans, and Venezuelans; and Family Reunification Parole. The existence of this memorandum was first reported by CBS News on February 19, 2025. *See* Camilo Montoya-Galvez, *U.S. pauses immigration applications for certain migrants welcomed under Biden*, CBS News, Feb. 19, 2025, https://www.cbsnews.com/news/u-s-pauses-immigration-applications-for-certain-migrants-welcomed-under-biden/, attached as **Exhibit A**.

## III.   Request to Expedite Processing

Requestor ASAP, a nonprofit membership organization, asks that USCIS expedite the processing of this FOIA request. Expedited processing is warranted because (1) the lack of expedited processing could pose an imminent threat to the life or physical safety of ASAP's thousands of members impacted by the pause; (2) there is "an urgency to inform the public about an actual or alleged federal government activity" by organizations "primarily engaged in disseminating information"; and (3) the single policy document subject to this FOIA request involves the "loss of substantial due process rights." 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e)(1).

**First**, Requestor must obtain the Feb. 14 Memo as soon as possible because the Feb. 14 Memo potentially leaves close to 800,000 people who entered on parole imminently vulnerable to removal to countries where their physical safety or lives are in danger.[3] *See* 6 C.F.R. § 5.5(e)(1)(i).

---

[2] *See, e.g.*, ASAP, *Do you have parole or TPS that is going to expire? Consider applying for asylum now*, available at: https://help.asylumadvocacy.org/parole-tps/ (last updated: Feb. 4, 2025).

[3] *See* Ex. A (noting roughly 240,000 Ukrainians arrived under the Uniting for Ukraine and 530,000 people entered through CHNV); Camilo Montoya-Galvez, *U.S. opens new immigration path for Central Americans and Colombians to discourage border crossings*, CBS News, July 7, 2023, https://www.cbsnews.com/losangeles/news/immigration-colombia-central-america-border-us-relatives-

As Lynden Melmed, former Chief Counsel of USCIS, explained, the benefits pause ordered in the Feb. 14 Memo leaves parolees "susceptible to removal from the country if the government terminates their parole status"[4] or if their parole expires.  Many of the parolees impacted by the Feb. 14 Memo fled oppressive regimes, death threats, and persecution in their home countries.[5]  Requestor—and the public—must review the Feb. 14 Memo immediately in order to understand the scope of the benefits pause and whether parolees impacted by the pause could challenge their removal to countries where their physical safety or lives are in danger.  Without access to the Feb. 14 Memo, hundreds of thousands of people could be left vulnerable to potential deportation and harm in their home countries based on an undisclosed government directive.

**Second**, the Feb. 14 Memo ordering a benefits pause constitutes an "actual or alleged federal government activity," and there is an urgency to inform the public about the details surrounding the benefits pause.  *See* 6 C.F.R. § 5.5(e)(1)(ii).  The Feb. 14 Memo pausing "all immigration applications," including asylum, TPS, and adjustment of status applications, for certain parolees has already gone into effect.  However, without the final Feb. 14 Memo itself, the impacted people and the public have no understanding of the federal government's policy, the details surrounding or rationale for the pause, or how to challenge or request review of a benefits pause in a particular person's case or on a systemic basis.[6]

The federal government's suspension of various parole programs has garnered widespread public interest,[7] thus it is critical for the public to have a clear understanding of a federal policy that curtails benefits for immigrants and asylum seekers who entered under such programs.  *See* 6 C.F.R. § 5.5(e)(3) ("The existence of numerous articles published on a given subject can be helpful to establishing the requirement that there be an 'urgency to inform' the public on the topic").  Additionally, ASAP's over 690,000 members—to which ASAP disseminates information at no

---

border-crossings/ (stating that the United States committed to welcoming up to 100,000 Central Americans through the Family Reunification Parole Process).

[4] Ex. A.

[5] *See, e.g.*, Luis Melecio-Zambrano, *They entered the country legally to flee desperate conditions. Now, they could be deported*, The Detroit News, Feb. 9, 2025, https://www.detroitnews.com/story/news/nation/2025/02/09/some-who-entered-us-legally-to-flee-desperate-conditions-now-face-deportation/78372307007/; Anna-Catherine Brigida, *'We don't have options': Trump ends parole for Venezuelans, Cubans, Nicaraguans and Haitians*, Housing Landing, Jan. 23, 2025, https://houstonlanding.org/we-dont-have-options-trump-ends-parole-for-venezuelans-cubans-nicaraguans-and-haitians/; Camilo Montoya-Galvez, *In 2 years since Russia's invasion, a U.S. program has resettled 187,000 Ukrainians with little controversy*, CBS News, April 24, 2024, https://www.cbsnews.com/news/ukrainian-refugees-us-uniting-for-ukraine-russia-invasion/.

[6] Ex. A.

[7] *See supra* note 5; *see also* Priscilla Alvarez, *Trump prepares to revoke legal status for many migrants who arrived under Biden*, CNN, Feb. 1, 2025, https://www.cnn.com/2025/02/01/politics/migrants-legal-status-trump-biden/index.html; Hamed Aleaziz, *Trump Officials Pause Programs to Let In Immigrations, Including Ukrainians*, The New York Times, Jan. 24, 2025, https://www.nytimes.com/2025/01/24/us/politics/trump-immigration-pause.html; Sergio Martínez-Beltrán, *Trump orders end of humanitarian parole for migrants of 4 countries*, NPR, Jan. 20, 2025, https://www.npr.org/2025/01/20/nx-s1-5268986/trump-humanitarian-parole-immigration;

cost—have collectively identified making the asylum system more accessible and transparent as urgent priorities.[8] It is critical and urgent that a federal policy pausing the processing of asylum and other benefits to nearly 800,000 people in the United States be made public.

Further, Requestor is an organization "primarily engaged in disseminating information." *See* 6 C.F.R. § 5.5(e)(1)(ii). ASAP has the capacity and intent to disseminate widely the requested information to its over 690,000 members, the media, and the public more broadly. ASAP already shares information about immigration law and the asylum process on our website, https://www.asylumadvocacy.org, as well as through technical assistance, regular member-wide updates, and social media. Requestor's staff will review, analyze, share, and disseminate the Feb. 14 Memo obtained through this FOIA request. Additionally, Requestor has frequent contact with national print and news media and plans to share the Feb. 14 Memo with interested outlets.

**Third**, this FOIA request implicates the "loss of substantial due process rights." *See* 6 C.F.R. § 5.5(e)(1)(iii). As noted above, the private Feb. 14 Memo *indefinitely* paused *all* pending immigration applications filed by nearly 800,000 parolees, seemingly without giving the impacted applicants notice of or an opportunity to challenge the indefinite pause—essentially a constructive denial—of their applications. The federal government's constructive denial of immigration benefits, carried out via a nonpublic memorandum, likely violates applicants' right to due process. *See, e.g.*, *Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1162 (9th Cir. 2005) ("Immigration proceedings . . . must conform to the Fifth Amendment's requirement of due process").

ASAP certifies that the above information is true and correct to the best of the Requestor's knowledge. *See* 6 C.F.R. § 5.5(e)(3).

## IV.     Request for Waiver of Costs

The Requestor requests that USCIS waive all fees associated with this FOIA request. ASAP is entitled to a fee waiver because disclosure of the Feb. 14 Memo "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 6 C.F.R. § 5.11(k) (records may be furnished without charge or at a reduced rate if the information is in the public interest, and disclosure is not in commercial interest of the requestor).

### a.  Disclosure of the Information is in the Public Interest

Disclosure of the Feb. 14 Memo will contribute significantly to the public's understanding of how the United States is processing applications for immigration benefits. In determining whether a disclosure of information is in the public interest, the Agency considers whether: (i) the subject of the request concerns "operations or activities of the federal government"; (ii) the disclosure is likely to contribute to an increased public understanding of government operations or activities; (iii) the disclosure of the requested information will contribute to the understanding of a "reasonably broad audience of persons interested in the subject"; and (iv) disclosure is likely to

---

[8] *See* ASAP, *5 Ways to Change the Asylum Process*, available at: https://help.asylumadvocacy.org/5-ways-to-change-the-asylum-process/ (last updated Oct. 25, 2024).

contribute a "significant extent" to the public's understanding of the subject in question. 6 C.F.R. §§ 5.11(k)(2)(i)-(iv). Each of these factors is satisfied here.

**First**, the Feb. 14 Memo pertains directly to "operations or activities of the federal government," namely how USCIS, a federal agency, plans to treat applications for immigration benefits, including asylum, TPS, and adjustment of status, filed by nearly 800,000 parolees.

**Second**, disclosure of the currently private Feb. 14 Memo will contribute to public understanding of the Agency's decision to pause processing of applications for immigration benefits, including asylum, TPS, and adjustment of status, filed by up to about 800,000 parolees. The lack of transparency around USCIS's decision to pause these applications "cast a cloud of uncertainty over many migrants who were in the process of applying for various immigration benefits." Ex. A. To Requestor's knowledge, the Feb. 14 Memo is not publicly available, thus its disclosure will contribute to the public's understanding of this crucial government activity.

**Third**, disclosure of the Feb. 14 Memo will contribute to the understanding of a reasonably broad audience of persons interested in the subject. As an initial matter, the information requested impacts close to 800,000 parolees.[9] Additionally, as discussed above, the federal government's suspension of various parole programs is a matter of widespread public interest;[10] the public should thus have a better understanding of a federal policy that curtails benefits for immigrants and asylum seekers who entered the United States under such programs. Finally, ASAP has the capacity and intent to disseminate widely the Feb. 14 Memo directly and through its media contacts. *See* 6 C.F.R. § 5.11(k)(2)(iii) (noting that a requestor's expertise in the subject area as well as his or her ability and intention to effectively convey information to the public shall be considered when evaluating this factor).

**Fourth**, disclosure of information obtained through this FOIA will likely contribute significantly to the public's understanding of USCIS's decision to pause immigration benefits for parolees. To ASAP's knowledge, the Feb. 14 Memo is not yet public, thus its disclosure will help shed light on USCIS's approach to parolees' applications for benefits and give the public a better understanding of the same.

### b. Disclosure of the Information is Not in the Requestor's Commercial Interest

Requestor is a tax-exempt, not-for-profit 501(c)(3) organization. Requestor seeks the requested information for the purpose of educating our clients, members, and the public—not for the purpose of commercial gain. Requestor will also use the information obtained to inform our organizational materials and guidance, as ASAP provides free resources to asylum seekers across the United States. As such, a waiver of fees is especially warranted given that "Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." *Jud. Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

---

[9] *See supra* note 3.

[10] *See supra* note 7.

If the full fee waiver is not granted, however, ASAP requests a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II). Further, if no fee waiver is granted and the anticipated costs associated with this request exceed $25.00, please notify Requestor to obtain consent and provide an estimate of the additional fees.

V.      **Conclusion**

Thank you for your consideration of this request. Without waiving any other appeal rights, Requestor reserves the right to appeal a constructive denial of this request as well as decisions to withhold information or deny a fee waiver, limitation of processing fees, or expedited processing. Requestor also reserves the right to challenge the adequacy of the search for responsive documents, as well as any redactions in the records produced in response to this request.

If you have any questions regarding this request, please contact attorneys Zachary Manfredi, Jessica Hanson, Marcela Johnson, and Juan Bedoya at the email address listed in the signature block below.

Sincerely,

*Jessica Hanson*

Zachary Manfredi
Jessica Hanson
Marcela Johnson
Juan Bedoya
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S., #84810
New York, NY 10003-1502
(646) 647-6779
foia@asylumadvocacy.org

# EXHIBIT A

# U.S. pauses immigration applications for certain migrants welcomed under Biden

*Camilo Montoya-Galvez*

Updated on: February 19, 2025 / 12:05 PM EST / CBS News

Immigration applications paused for some

[U.S. pauses immigration applications for certain migrants welcomed under Biden 03:06](#)

The Trump administration has enacted a pause on all immigration applications filed by migrants from Latin America and Ukraine allowed into the U.S. under certain Biden-era programs, citing fraud and security concerns, according to two U.S. officials and an internal memo obtained by CBS News.

The application freeze will remain in place indefinitely while government officials work to identify potential cases of fraud and enhance vetting procedures to mitigate concerns related to national security and public safety, according to the directive.

The move, which had not been previously reported, threatens to cast a cloud of uncertainty over many migrants who were in the process of applying for various immigration benefits that would allow them to stay in the U.S. legally and, in some cases, permanently.

While the exact number of affected migrants is unclear, the hold on applications applies to several Biden administration programs that allowed hundreds of thousands of foreigners to come to the U.S. legally through an immigration law known as parole. That law empowers the U.S. government to welcome foreigners quickly on humanitarian or public benefit grounds.

The Biden administration used parole at an unprecedented scale, partially to encourage migrants to sign up for legal migration channels instead of crossing the southern border unlawfully. The Trump administration moved swiftly to suspend those efforts, arguing that they abused the parole authority.

The Trump administration had previously [halted](#) new entries under Biden-era parole policies. But in a memo dated Feb. 14, Andrew Davidson, a top U.S. Citizenship and Immigration Services official, ordered an agency-wide "administrative pause" on all "pending benefit requests" filed by migrants already allowed into the U.S. under three Biden administration programs.

They include a policy, called Uniting for Ukraine, set up to offer a safe haven to those fleeing the Russian invasion of Ukraine. Roughly 240,000 Ukrainians with American sponsors arrived in the U.S. under that process before President Trump took office. Another affected program, known as CHNV, allowed 530,000 Cubans, Haitians, Nicaraguans and Venezuelans sponsored by American citizens to enter the U.S.

The third impacted program consists of processes that permitted some Colombians, Ecuadorians, Central Americans, Haitians and Cubans with American relatives to come to the U.S. to wait for a family-based green card to become available.

Because those allowed into the U.S. under these programs were only given temporary work permits and deportation

protections that typically last for two years, many of them applied for other immigration benefits, lawyers and experts said.

Those benefits include a program known as Temporary Protected Status for migrants from crisis-stricken countries like Haiti, Ukraine and Venezuela; asylum, which allows those fleeing persecution to gain a permanent safe haven in the U.S.; and green cards, or permanent American residency. Because of a Cold War-era law, Cubans paroled into the U.S. are eligible to apply for green cards.

But under the internal USCIS directive, officials will no longer be able to process any applications for these programs or any other benefit if the requests were filed by migrants who arrived in the U.S. under the targeted Biden administration policies.

"This effectively freezes their ability to move into another legal status," said Lynden Melmed, who served as the top lawyer at USCIS during the administration of former President George W. Bush and now works as a partner at Berry Appleman & Leiden LLP. "In the interim, they would remain susceptible to removal from the country if the government terminates their parole status."

The USCIS memo said the move is justified because "[c]urrently, fraud information and public safety or national security concerns are not being properly flagged in USCIS' adjudicative systems." The directive cites the Biden administration's move last year to temporarily pause the parole initiative for Cubans, Haitians, Nicaraguans and Venezuelans due to fraud concerns.

In his memo, Davidson referenced investigations that he said found thousands of CHNV applications with "serial sponsors," information of deceased individuals or identical addresses. He said some of those cases were proven to be fraud. Davidson also said some migrants allowed into the U.S. under CHNV "were not fully vetted."

The pause, Davidson said in his memo, could potentially be lifted, but only once officials complete a "comprehensive review and evaluation of the in-country population of aliens who are or were paroled into the United States under these categorical parole programs."

Representatives for DHS did not respond to requests to comment on CBS News' reporting.

The Trump administration has targeted those who've come to the U.S. under the Biden-era immigration parole programs in other ways, too.

Last month, officials authorized federal immigration agents to seek the deportation — including in an expedited fashion in some cases — of those permitted to enter the U.S. under the CHNV program and other Biden administration parole policies. The administration has also drafted plans to revoke the parole status of many of those who've come to the U.S. under CHNV.

Camilo Montoya-Galvez



Camilo Montoya-Galvez is the immigration reporter at CBS News. Based in Washington, he covers immigration policy and politics.

Twitter